UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANINDER SANDHU (A-Number: 245-587-669),

        Petitioner,

    v.

CHRISTOPHER CHESTNUT,

        Respondent.

Case No. 1:26-cv-2091-DJC-JDP

ORDER; FINDINGS AND RECOMMENDATIONS

Petitioner Maninder Sandhu entered the United States in 2023 and was re-detained by ICE in 2026. Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a bond hearing violates the Fifth Amendment. For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

On December 13, 2023, petitioner entered the United States, was briefly detained by immigration officials, and then was released on his own recognizance. ECF No. 8-1 at 2-3. Between May 2024 and October 2025, petitioner allegedly violated his parole on six occasions; the alleged violations consisted of failed home visits and missed biometric check-ins. *Id*. at 12.

On January 6, 2026, petitioner was arrested and charged with battery against a spouse or

1

cohabitant in violation of California Penal Code § 243(e).  *Id*.  That charge remains pending.

On January 7, 2026, petitioner reported to the Stockton ICE office, where he was re-detained.  *Id*. at 11.  There is no indication that petitioner has been provided a bond hearing; on the contrary, respondent maintains that petitioner "is subject to mandatory detention and thus ineligible for a bond hearing."  ECF No. 8 at 2.

In March 2026, an immigration judge denied petitioner's request for asylum and ordered him removed.  ECF No. 8-2; *see also* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited April 26, 2026).  Petitioner appealed this order, and his appeal remains pending.  ECF No. 12-1 at 8.  Accordingly, the order of removal is not final.  *See* 8 U.S.C. § 1101(a)(47)(B).

## Procedural History

On March 16, 2026, petitioner filed a petition for writ of habeas corpus.[1]  ECF No. 1.  The following day, the court ordered respondent to show cause why the petition should not be granted.  ECF No. 6.  On March 23, 2026, respondent responded to the order to show cause and stated that petitioner had been ordered removed.  ECF No. 8 at 2.  In light of that representation, the court found that it was not "clear whether Petitioner is entitled to relief" and referred the matter to me for further briefing.  ECF No. 9.

On April 9, 2026, respondent field an answer to the petition.  ECF No. 12.  The petition and answer are deemed submitted.[2]  ECF No. 11 at 2.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."

---

[1] Petitioner concurrently filed a motion to proceed *in forma pauperis*.  ECF No. 2.  Because petitioner makes the requisite showing, this motion will be granted

[2] In light of my recommendation that the case be closed, I will deny as moot the following two motions: (1) petitioner's motion for the appointment of counsel, ECF No. 3; and (2) petitioner's motion for reconsideration of the appointment of counsel, ECF No. 13.

2

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Fifth Amendment. ECF No. 1 ¶¶ 46-49. Respondent counters that petitioner's detention has not become prolonged such that it violates due process. ECF No. 12 at 1-4. However, respondent was put on notice by the court's minute order that the court construes the petition as alleging that petitioner was not afforded adequate due process upon his re-detention. *See* ECF No. 6. Indeed, the court cited a prior case in which it found that a petitioner previously released by immigration officials is entitled to procedural safeguards "immediately upon" re-detention. *See Garcia Mariagua v. Chestnut*, No. 1:25-cv-1744-DJC-CSK, 2025 WL 3551700, at *4 (E.D. Cal. Dec. 11, 2025); *see also Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *4 (E.D. Cal. Nov. 7, 2025) (cited by the court in the same minute order; finding that procedural safeguards "should have been afforded to [the petitioner] immediately upon" re-detention). Respondent acknowledged this holding, stating that "[t]his Court has rejected Respondent's position and found that noncitizens released into the United States develop a protected liberty interest that entitles them to procedural safeguards." ECF No. 8 at 2 (citing *Garcia Mariagua*, 2025 WL 3551700, at *4). Accordingly, respondent's answer—which, as noted, only contests that petitioner's detention has become prolonged—is not responsive to the issue of whether petitioner's re-detention violates the Fifth Amendment because he was entitled to a bond hearing upon his re-detention.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest

accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release.  *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

4

Immigration officials released petitioner on his own recognizance in 2023. ECF No. 8-1 at 3. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over two years. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M.R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in continued release that developed over the two years between his release and his re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

5

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high.  Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").  Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest.  *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty.  *See id*.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Respondent has not provided any information about the additional burden that would fall on them

6

as a result of being required to provide a bond hearing.  *See* ECF No. 12.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 17.  While respondent did not acknowledge this issue in the answer, respondent previously argued that the proper remedy is a bond hearing.  ECF No. 8 at 3.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."  *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).  "Indeed, common-law habeas corpus was, above all, an adaptable remedy.  Its precise application and scope changed depending upon the circumstances."  *Id.*; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody").

Before re-detaining petitioner, due process would ordinarily require a pre-deprivation hearing.  *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.").  However, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."  *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).  For example, in *Martinez Hernandez v. Andrews*, the court held that, where the petitioner had allegedly violated his parole, a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."  No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025).

Here, as noted, petitioner was arrested and charged with battery on January 6, 2026.  ECF No. 8-1 at 11.  That same day, ICE received notice of the arrest/charge and determined that petitioner should be re-detained.  *See id*.  Accordingly, the following day, ICE required petitioner

7

to report in person to its Stockton office, where he was re-detained. *Id*. Under these circumstances, I find that it is "at least arguable that providing [petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12. Accordingly, the present record does not establish that petitioner was constitutionally entitled to a pre-deprivation hearing.

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing." *See Guillermo M.R.*, 791 F. Supp. 3d at 1036. Petitioner, as noted, has not been afforded such a hearing. Accordingly, I find that the appropriate remedy is a bond hearing. *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

### Conclusion

Accordingly, it is hereby ORDERED that:

1. Petitioner's motion to proceed *in forma pauperis*, ECF No. 2, is GRANTED.

2. Petitioner's motion for the appointment of counsel, ECF No. 3, is DENIED.

3. Petitioner's motion for reconsideration of the appointment of counsel, ECF No. 13, is DENIED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 245-587-669) be provided a bond hearing within five days of the date of the court's order. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 27, 2026                          _____
                                                 JEREMY D. PETERSON
                                                 UNITED STATES MAGISTRATE JUDGE

9